IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03cv69

| | |
|---|---|
| POLYPRO, INC.,<br>      Plaintiff,<br><br>vs.<br><br>TODD M. ADDISON AND ULTRA<br>FLEX PACKAGING CORPORATION,<br>      Defendants. | <u>MEMORANDUM AND ORDER</u> |

Plaintiff Polypro, Inc. sued defendants Todd M. Addison and Ultra Flex Packaging Corporation, seeking a declaration of invalidity and noninfringement related to defendants' United States Patent No. 6,186,934B1 ("the '934 patent") and Claims 14-18 of United States Patent No. 6,428,208 ("the '208 patent"). Defendants counterclaimed, accusing plaintiff of manufacturing and selling a product that infringes defendants' patents. Jurisdiction is present under 28 U.S.C. §§ 1331, 1332, and 1338.

The matter is before the Court on plaintiff's partial motion for summary judgment (Doc. No. 29) and supporting memorandum (Doc. No. 30). Plaintiff contends that both patents are invalid under the on-sale bar of 35 U.S.C. § 102(b) and for inequitable conduct. Defendants contend that this case is not ripe for summary judgment since genuine issues of material fact exist on both grounds. This Court concludes defendants offered an embodiment of the '934 patent and Claims 14-18 of the '208 patent for sale prior to March 8, 1999. Because the Court finds the patents are invalid based upon the on-sale bar, the plaintiff's alternate claim of unenforceability due to inequitable conduct is moot.

From the parties' submissions, the Court finds the following facts to be material and

1

undisputable.

BACKGROUND

a.  Patents-at-Issue

Plaintiff Polypro, Inc. and defendants Todd. M. Addison and Ultra-flex (hereafter defendants collectively referred to as "Ultra Flex") are rival manufacturers of hanger bags commonly used for retail display of consumer goods. The patents-in-suit, the '208 patent and the'934 patent, are owned by Ultra Flex, and relate to a hanger bag with "chip hook" (hereinafter "chip bag") formed from two sheets of thin plastic film, with a header region containing a rigid plastic "J-hook" used for hanging, and method for producing the same. '208 is a continuing-in-part application of the '934 patent. An example of the bag-at-issue is shown in Exhibit 5.[1] The filing date of the '934 and '208 patents was March 8, 2000.

The material claims of the patents are as follows:

U.S. Patent No. 6,186,934

Independent Claim 1 upon which Claims 2-6 ultimately depend, recites:

> A method forming a package comprising:
> providing a web of thin film plastic material;
> folding said web of said thin film plastic material transversely of its length; cutting an opening in the double back web of said thin material into the folding line thereof; inserting an internal profile plastic insert with an internally formed J-shaped slot between said double back web pieces coincident with the opening cut into the folding line of the double back web and such that said insert does not project beyond the folding line in a direction away from the doubled back web pieces; and securing said insert against movement to said header.

U.S. Patent No. 6,428,208

---

[1]The Exhibit numbers refer to the Court's enumeration of exhibits attached to the Plaintiff's motion fo summary judgment.

Independent Claim 14 upon which Claims 15-18 ultimately depend, recites:

> A package comprising: a bag part defined by a first wall and a second wall connected along side edges thereof to define an internal compartment therein; the first and second walls further defining a header portion ending in a leading edge of the package; the leading edge of the package having a cut extending inwardly into the header portion toward the compartment; an internal profile insert part located within the header portion and secured against movement to the header portion and having a J-shape lot formed therein located generally coincidentally with the cut in the header portion; the header portion being formed from a single web of sheet material folded back on itself and the leading edge of the package being the folded back portion of the single web; wherein one of the first and second walls being defined by the single web of sheet material and the insert being made from a substantially rigid blank and the first and second walls being of thin film sheet material.

b. Sale of the Patented Products

On or about January 29, 1999, Donna Kussoff of Auburn Hosiery, a subsidiary of the Gerber Company ("Gerber") faxed to Ellen Keegan of Ultra Flex a "request for a quotation" for display bags with both "chip hook" and "no chip hooks." Exhibit 1. The fax indicated an urgent need to get a "new hosiery program shipped ASAP." The request for quote was specific as to item number, (including item 9000-0861, the bag-at-issue), period, and quantity of supply and recognized that the initial order would be for regular bags with holes because it would take longer for chip bags due to a need for a "special mold." At deposition, Kussoff identified Exhibit 5, the bag-at-issue, as the item she purchased.

In response to Kussoff's request, Al Salerno of Ultra Flex sent her a price quote for bags with "lip" and for "lip + Gerber Chip." Exhibit 2. The quote, dated January 29, 1999, was specific as to color, type, quantity, size and price. Salerno also delivered a prototype of the bag-at-issue directly to Donna Kussoff.

On or about February 12, 1999, Ultra Flex acknowledged an order for 30M (30,000) bags with "lip + Chip hanger" with an expected shipping date of February 26, 1999. Exhibit 3. The Order Number was 0946827. The instructions specified were to ship "½ ASAP - balance 45 days after 1st shipment." The document references the item number of the bag-at-issue, 9000-0861, and the "chip hanger."

A packing slip from Ultra Flex shows that an order of the bags-at-issue was placed, received, and shipped by defendants. Exhibit 4. On the slip, reference is made to an Item No. 9000-0861, the item number of the bags as discussed <u>supra</u>. The Order Number was 0946827, which matches the Order Number printed on Exhibit 3. The pertinent dates of this document show the order was made on February 12, 1999, and shipped on March 17, 1999.

DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). <u>Enzo Biochem, Inc. v. Gen-Probe Inc.</u>, 424 F.3d 1276 (Fed. Cir. 2005). A patent is presumed to be valid, <u>see</u> 35 U.S.C. § 282 (1994), and this presumption only can be overcome by clear and convincing evidence to the contrary. <u>Id.</u> 424 F.3d at 1281 (citing <u>WMS Gaming Inc. v. International Game Tech.</u>, 184 F.3d 1339, 1355 (Fed. Cir. 1999)).

1. On-Sale Bar

Whether an invention is "on sale" within the meaning of 35 U.S.C. § 102(b) is a question of law. <u>Monon Corp. v. Stoughton Trailers, Inc.</u>, 239 F.3d 1253, 1257 (Fed. Cir. 2001). Evidence that the invention covered by the claims of the '934 and '208 patents was the subject of an offer for sale

4

before the critical date of March 8, 1999 must be viewed in a light most favorable to the non-moving party. Id. (citing Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339 (Fed.Cir. 2000)). However, once the moving party establishes the lack of a genuine issue of material fact, the burden shifts to the non-moving party to set forth specific material facts in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Section 102(b) provides, in relevant part, that "[a] person shall be entitled to a patent unless . . . the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (2000). The Supreme Court, in Pfaff v. Wells Electronics, Inc., has established a two-prong test for the application of the on-sale bar. "First, the product must be the subject of a commercial offer for sale. . . . Second, the invention must be ready for patenting." 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). Each of the two Pfaff prongs are evaluated below.

a. Commercial Offer For Sale

An inventor loses his right to a patent if he has placed his invention on sale in this country, more than one year prior to the date of the application for patent. Buildex Industries, Inc. v. Kason Industries, Inc., 849 F.2d (Fed Cir.1988). As succinctly stated by Justice Learned Hand, "[i]t is a condition upon an inventor's right to a patent that he shall not exploit his discovery competitively after it is ready for patenting; he must content himself with either secrecy or legal monopoly." Pfaff, 525 U.S. at 68 (citing Metallizing Engineering Co. v. Kenyon Bearing and Auto Parts Co., 153 F.2d 516, 520 (2nd Cir. 1946)). The underlying policies of § 102(b) include (1) discouraging removal of inventions from the public domain; (2) favoring prompt and widespread disclosure of inventions; (3) giving the inventor a reasonable amount of time following sales activity to determine the value of a

patent; and (4) prohibiting an extension of the period for exploiting the invention. King Instrument v. Otari Corporation, 767 F.2d 853, 860 (Fed. Cir. 1985).

It is not necessary that a sale be consummated for the bar to operate. Buildex Industries, 849 F.2d at 1464. Even if no delivery is made prior to the critical date, the existence of a sales contract or the signing of a purchase agreement prior to the date has been held to demonstrate an on sale status for the invention. Id. (citations omitted).

Applying these principles and policies to the instant case, plaintiff has established by clear and convincing evidence, taken in a light most favorable to the defendants, that a bona fide offer to sell the patented chip hook was made more than one year before the patent application. Ultra Flex engaged in commercial activity for profit with respect to the chip bag prior to the critical date, March 8, 1999. There is no genuine issue of material fact that the chip bag offered for sale is in fact the concept embodied in all claims of the '934 patent and Claims 14-18 of the '208 patent. The plaintiff has demonstrated by clear and convincing evidence as set forth in the chart comparing the patent claims with the deposition testimony that the chip bag offered for sale by defendants to Gerber is in fact the concept embodied by the claimed invention. See Plaintiff's Memorandum In Support at 8-10.

There is also no genuine issue as to the fact that Ultra Flex contractually bound itself to provide the chip bags to Gerber. The chronology shows an invitation to quote, and concomitant order. All of the terms necessary to consummate the purchase order were completed prior to the critical date, March 8, 1999. The parties agreed to the price, quantity and other essential terms of the financial transaction. All that remained was for delivery to occur at a later date. Kussoff, the Gerber representative, ordered a "Gerber Chip," "J" hook product based upon her examination of the product and her initialing of the bag. The deposition testimony of the inventor, Todd Addison,

establishes that a prototype product was in existence and shown to the customer. He identified the exhibit depicting the chip bag as the one shown to Gerber. There simply is no evidence upon which a jury could determine that an offer to sell had not been made.

Defendants assert, somewhat half-heartedly, that there were essentially three products, a non-patented hole bag; a Gerber Chip bag; and the patented bag, and that Ultra Flex's offer to sell was for a non-patented "hole bag and a "Gerber Chip" bag, not the patented product. This assertion is not supported by any evidence. Rather, the facts demonstrate only two products: the non-hole bag and the patented product. The illusory non-patented Gerber Chip bag arises only in defendants' response, not from the facts, and the undisputed proof shows a commercial offer for sale of a chip bag that embodied the claimed invention.

The authenticated documents: Gerber's request (Exhibit 1), Ultra Flex's "Quotation" (Exhibit 2), Ultra Flex's order acknowledgment (Exhibit 3), and packing slip showing the order shipping date (Exhibit 4) clearly created the necessary contractual obligations on the parties to constitute a commercial offer for sale. Enzo, supra, 424 F.3d at 1281 (citing Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1046-48 (Fed.Cir. 2001) (discussing principles useful to determine whether a communication or series of communications rises to the level of a commercial offer for sale)).

Defendants assert that the Gerber order was really for non-patented hole bags "with an alternative provision for sale of substitute bags with a "Gerber Chip" when and if such a bag became commercially feasible at a future date." Defendants' Response Brief at 4. However, the Court finds that no reasonable jury could construe the documents establishing the offer for sale in this fashion and that therefore no genuine issue of material fact exists.

No contingent language is used in the documents forming the contractual offer to sell. Gerber's request for quotes was for quantities of chip hooks, albeit acknowledging that "initial" orders would be filled by "regular bags with holes" until development of a special mold for the chips. (Exhibit 1). Ultra Flex's response "Quotation" (Exhibit 2), dated January 29, 1999, was specific, not contingent, as to both bags with "Gerber Chips" and without. In fact, Ultra Flex priced the bags with and without chips separately. Finally, Ultra Flex's confirmation of the order for 30m (30,000) bags with chips, dated February 12, 1999 (Exhibit 3) likewise was not contingent. This unequivocal offer for sale combined with defendant Addison's admission (Affidavit ¶ 12) to having made a handmade chip and shown it to personnel at Gerber negates defendants' assertion that there was no offer to sell.

b. Ready for Patenting

The second prong of the Pfaff test, whether the product is ready for patenting, may be satisfied in one of two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date, the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention. Pfaff, supra, 110 S.Ct. at 312. In this case, the plaintiff asserts that the Pfaff standard has been met as the claimed product was ready for patenting in both ways: first, a working prototype of the product demonstrates that it was reduced to practice before March 8, 1999; and second, comparison of the photographs contained in Exhibit 5 with the claimed invention contained in Exhibit 6 demonstrate a sufficient description to enable one skilled in the art to practice the invention. The Court agrees.

First, to show an "actual reduction to practice," the plaintiff needs to show that the patentee developed a working model of the invention or performed the method of the invention. See Pfaff,

8

525 U.S. at 67, 119 S.Ct. 304. The actual reduction to practice must include all the elements and limitations of the claimed invention in order to constitute an on-sale bar. In the instant case, deposition testimony of the inventor, Todd Addison, establishes that a prototype product was in existence and shown to the customer. He identified the exhibit depicting the chip bag as the one shown to Gerber. While defendants may deny that the sample chip-bag includes all the elements and limitations of the claimed invention, it is clear that the sample was a working product before the critical date.

Second, in order to show that Ultra Flex "prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention," the plaintiff must offer evidence that Ultra Flex provided Gerber with a description which disclosed the invention prior to the critical date of March 8, 1999. In the instant case, the second prong of the on-sale bar is satisfied by comparison of the photographs contained in Exhibit 5 with the claimed invention contained in Exhibit 6. The comparison of photograph with the patent, as supported by the deposition testimony of both Addison, who stated he had made a prototype by hand, and Kussoff who described the product ordered in identical terms to the claims of the patent all demonstrate a sufficient description to enable one skilled in the art to practice the invention.

Defendants essentially argue that the product was not ready for patenting until a high speed machine capable of mass producing the chip bag was invented sometime after March 8, 1999. They assert that this "high speed package machine" was "critical" to the practicing of the invention and until developed, the invention was not ready for patenting. Defendants' Response Brief at 11.

This argument cannot be sustained. A high-speed packaging machine simply is not part of the relevant claims of patents '934 and '208. The mass production of the invention is a separate matter from whether the patented design and method existed at the time of the offer for sale. On this

9

point Addison, the inventor, admitted that he had developed the plastic chip shown in the patent drawing prior to March 8, 1999. See Addison Affidavit, ¶ 12. It was this bag that was offered for sale to Gerber, not contingently, as argued by defendants, but rather temporally later in time to the non-patented "hole" bag. The chip bag ordered by Gerber, acknowledged by Ultra Flex as to price and quantity, and ultimately delivered by the defendants, is the claimed invention. The defendants exploited the invention for profit after it was ready for patenting and thereby forfeited their right to legal monopoly when they failed to apply for a patent within the statutory one year period.

2. Failure to Disclose Defense

In its Motion for Summary Judgment, plaintiff further contends that the '208 and '934 patents are unenforceable because of a violation of the patentee's duty to disclose material information to the patent office. Because the Court has found that the on sale bar invalidates the patents in question, this claim is rendered moot.

CONCLUSION

Because Ultra flex offered for sale an embodiment of its claimed invention more than one year before the critical date of its patent, the patent was invalid under the on-sale bar of 35 U.S.C. § 102(b). Accordingly, summary judgment is granted to Polypro, Inc.

**THEREFORE, IT IS HEREBY ORDERED THAT** plaintiff's motion for partial summary judgment in its declaratory action against defendants on the grounds that all Claims of United States Patent No. 6,186,934B1 and Claims 14-18 of United States Patent No. 6,428,208 are invalid is GRANTED. Defendants' counterclaim against plaintiff is DISMISSED.

**Signed: January 6, 2006**

Robert J. Conrad, Jr.
United States District Judge

EXHIBIT 1

05/09/2001  09:15   423-622-7695   GATEW

~~To Brenda Adams~~     ~~TO JEFF NAYLOR~~

To: Ellen

# Fax ~~Page 1 of 2~~

From: Karen Rue

1333 Broadway, Suite 700 ● New York, NY 10018 ● Phone 212-268-5100 ● Fax 212-268-7364

**ANY ADDITIONAL COMMENTS:**

| Poly Bag # | Used for Product # | Per Poly Bag Feb | Mar | April | May | Jun |
|---|---|---|---|---|---|---|
| 9000-0864 | 15040, 15042, 15044 | 6068 | 6068 | 6068 | 6068 | 6068 |
| 9000-0865 | 15041, 15043, 15045 | 6068 | 6068 | 6068 | 6068 | 6068 |
| 9000-0861 | 15046, 15049, 15052 | 5940 | 5940 | 5940 | 5940 | 5940 |
| 9000-0862 | 15047, 15050, 15053 | 5388 | 5940 | 5940 | 5940 | 5940 |
| 9000-0863 | 15048, 15051, 15054 | 5176 | 5940 | 5940 | 5940 | 5940 |
| 9000-0866 | 15055, 15110 | 1944 | 1944 | 1944 | 1944 | 1944 |
| 9000-0867 | 15056, 15111 | 3672 | 3672 | 3672 | 3672 | 3672 |
| 9000-0868 | 15057, 15112 | 3888 | 3672 | 3672 | 3672 | 3672 |

2 mil polyethelene
Bag sz 4 3/4 x 9 1/2
Heat seal closed
Header will include a chip hook however initial orders will need to be regular bags with holes. Chip will take longer to get because special mold is needed.

Again — Any problems, questions or concerns please call me. I need to get this new hosiery program shipped ASAP. Thanks.

※ Please quote above quantities based on Donna's suggestions on chip hook/no chip hook. Thanks



## ULTRA FLEX

Converters • Printers & Laminators of Flexible Packaging

# QUOTATION

DATE 1/29/99

FOR: GATEWAY HOSIERY

ATTN: KAREN RUSH / JEFF NATION

| SIZE | COLORS | FILM GAUGE & TYPE | 10M | 20M | 25M | 30M | 50M | 75M |
|---|---|---|---|---|---|---|---|---|
| MIC 9000-0864 MIC 9000-0865 5 1/2 X 11 + 1 1/4 R. HDR + 1 1/2 W. LIP | 6 | .002 PE | 150.00 | 75.00 | 65.64 | 62.64 | 50.24 | 45.24 |
| 5 1/2 X 11 + 1 1/4 HDR + 1 1/2 W. LIP + GERBER CHIP | 6 | .002 PE | 185.25 | 106.64 | 96.48 | 89.72 | 75.50 | 68.74 |

APPROX. DELIVERY DATE                                    F.O.B. COLLECT

TERMS: NET 30 DAYS
ARTWORK AND PRINTING PLATES WILL BE SUPPLIED AT ADDITIONAL COST.

COMMENTS:

THANK YOU FOR YOUR INQUIRY

SALESPERSON  AL SALERNO

BY

ULTRA FLEX CORP. 975 Essex St. Brooklyn, N.Y. 11208 Tel (718) 272-9100 Fax (718) 272-5424

EXHIBIT 3

05/09/2001  09:15  423-622-7695  GATE

# ULTRA-FLEX
Manufacturers • Printers • Laminators of Flexible Packaging
876 Essex St., Brooklyn, NY 11208-5443  
ACKNOWLEDGMENT  
(718) 272-0100  Fax (718) 272-5424

ORDER NO. 9-4682

00-GATEWA1

**Sold to:**
GATEWAY HOSIERY MILLS, INC  
1601 HOLTZCLAW AVE.  
CHATTANOOGA, TN 37404

**Ship to:**
SAME  
ARTWORK, NEGS. & PLATES TO BILL  
TO AUBURN HOSIERY  
ATTN: DONNA KUSSOFF  
(AUBURN ART JOB #10027)

| DATE | EXP. SHPL DATE | CUST. P.O.# | F.O.B. | VIA | REPEAT# | SAME | CH. | NEW | SALESMAN | COMM |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/12/99 | 2/26 | 01465 | COLLECT | | | | | X | A8 | |

| QUANTITY | DIMENSIONS | STOCK | COL | PRICE/PERM |
|---|---|---|---|---|
| 30M | 4 3/4 X 11 + 1 1/4 HDR + 1 1/2 LIP + CHIP HANGER | .002 PE | 6 | $86.99 |

DESCRIPTION: GERBER - 6 PAIR BOBBIE SOCKS  
SIZE 6 - 12 MONTHS  
MIC #9000-0861

INV.#: GATE-#90000861

ART & PLATES: EXTRA

| COLOR 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| WHITE | YELLOW 601 | CHG. COLOR | BLUE 285 | BLUE SCREEN 289 | BLUE 289 |

FACE PRINT STARTS AT: X (L. SIDE)  
BACK PRINT STARTS: X (L. SIDE), X (OPEN END)  
READS WITH OPENING: NONE

19.478(4)62G  
057 - 6.05 SD

WICKETS: NONE  
LIP F: X, LIP B: 2, NO. HOLES: 1/4, TYPE HOLE: X  
LOCATION OF HOLES: TOP 1/3 OF BAG

HANDLES:  
STYLE: CHIP  
COLOR: BLUE 285  
DIR. FACE: LEFT

SPECIAL INSTRUCTIONS:  
SH - SHIP 1/2 ASAP - BALANCE 45 DAYS AFTER 1ST SHIPMENT  
ART BILLED ON ORDER 9-46827A

PLATE ON: ⊕  
BLUE ON: ⊕  
COLOR ON: ⊕

RECEIVED FEB 2 2 1999

ORDER SUBJECT TO TERMS AND CONDITIONS ON THE REVERSE SIDE

05/10/01  THU 10:59  [TX/RX NO 5462]  ☑004

EXHIBIT 4

**"PACKING SLIP"**

| | |
|---|---|
| CUSTOMER NO: | 00-GATE |
| ORDER NUMBER: | 0946827 |
| SHIP DATE: | 03/17/99 |
| ORDER DATE: | 02/12/99 |

ULTRA FLEX PACKAGING CORP.
975 ESSEX STREET
BROOKLYN NY 11208-5448

PHONE: (718) 272-9100
FAX: 718-2725424
SOLD TO:
GATEWAY HOSIERY MILLS, INC.
1601 HOLTZCLAW AVE

Chattanooga                    TN 37404

SHIP TO:
GATEWAY HOSIERY MILLS, INC.
1601 HOLTZCLAW AVE

Chattanooga                    TN 37404

| CUSTOMER P.O. | SHIP VIA | F.O.B | TERMS |
|---|---|---|---|
| 465 | ROADWAY | COLLECT | NET 30 DAYS |

| LOCATION | ITEM NO. | UNIT | ORDERED | SHIPPED |
|---|---|---|---|---|
| | GATE-#90000881  /M | | 30,000 | 18,800 |

GERBER 6pr BOBBIE SOCKS 6-12M         LOT/SERIAL:  _____   946827

   6 CTNS - 18,800 PCS - 220 LBS
 ( 4 X 4000  1 X 2800 )  BALANCE TO FOLLOW:

EXHIBIT 5










EXHIBIT 6



US006186934C1

# (12) REEXAMINATION CERTIFICATE (4621st)

## United States Patent
### Addison

(10) Number: **US 6,186,934 C1**
(45) Certificate Issued: **Jul. 23, 2002**

(54) **HANGER BAG**

(75) Inventor: **Todd M. Addison**, 15 Classic Dr., Trumbull, CT (US) 06611

(73) Assignee: **Todd M. Addison**, Trumbull, CT (US)

**Reexamination Request:**
No. 90/006,060, Jul. 12, 2001

**Reexamination Certificate for:**
| Patent No.: | 6,186,934 |
| Issued: | Feb. 13, 2001 |
| Appl. No.: | 09/521,455 |
| Filed: | Mar. 8, 2000 |

(51) Int. Cl.[7] .............................................. B31B 1/86
(52) U.S. Cl. .................. 493/226; 493/225; 493/231; 493/238
(58) Field of Search ................................ 493/225, 226, 493/231, 238

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,832,537 A   5/1989   Bennett
4,834,553 A   5/1989   Bennett
4,854,931 A   8/1989   Roberts et al.

FOREIGN PATENT DOCUMENTS

| JP | 176520 | 12/1979 |
| JP | 187505 | 10/1984 |
| JP | 223655 | 8/1995 |

OTHER PUBLICATIONS

Japanese text of Japan Patent 187505.
Japanese text of Japan Patent 223655.
Japanese text of Japan Patent 176520.

Primary Examiner—Eugene L Kim

(57) **ABSTRACT**

A package is formed from two sheets of thin film material which are double backed upon each other to form a header and a rigid plastic insert is connected to the header coincident with a cut out formed therein. The cut exposes an internalized J-shaped portion of the insert such that a hook can be readily inserted and maintain the bag in place on a display rack.



# REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 307

NO AMENDMENTS HAVE BEEN MADE TO THE PATENT

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

The patentability of claims 1–6 is confirmed.

\* \* \* \* \*